2013 OK CIV APP 18

**In the Matter of the ADOPTION OF M.E., a minor child,**

**Jonathan and Jaime Swim, Appellants,**

**v.**

**State of Oklahoma, Appellee.**

**No. 110,392.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 25, 2013.

Lana Cohlmia, Lana Cohlmia, P.C., Oklahoma City, Oklahoma, for Appellants.

Charles L. Waters, General Counsel, John K.F. Langford, Assistant General Counsel, Oklahoma Department of Human Services, Oklahoma City, Oklahoma, for Appellee.

Tsinea Bruno–Thompson, Tanner Jones, Oklahoma Lawyers for Children, Inc., Oklahoma City, Oklahoma, for Minor Child.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Petitioners/Appellants Jonathan Swim and Jaime Swim appeal the decision of the district court dismissing their Petition to adopt M.E., their former foster child, based upon a lack of eligibility to adopt. Because this Court finds the district court erred in its interpretation of 10 O.S.2001 § 7505–3.1(A)(9), we reverse and remand.

## BACKGROUND

¶ 2 M.E. was born in December 2006. In September 2007 when M.E. was approximately 10 months old, the Oklahoma Department of Human Services (DHS) placed M.E. in foster care with the Swims. The parental rights of M.E.'s natural parents were terminated in June 2008 and November 2009. In early 2010, the Swims were being evaluated by DHS and preparations had been taken to approve the Swims' adoption of M.E. In the Individualized Service Plan for M.E. filed April 8, 2010, the DHS worker noted:

> The adoption worker submitted the home study for approval, but the study was not approved and was stated by reader that a new re-assessment needed to be completed. The adoption worker is currently working on the re-assessment and will resubmit for approval on Wednesday 04/07/2010.

The ISP section concerning permanency for M.E. also noted "DHS is continuing to provide efforts to finalize the adoption."

¶ 3 On approximately April 14, 2010, Mrs. Swim observed her fourteen-year-old son GRS lying on top of her seven-year-old daughter. Although the children were clothed, Mrs. Swim was concerned the conduct appeared sexually inappropriate. Mrs. Swim contacted DHS to report the conduct and immediately removed GRS from the home. On April 19, 2010, after an investigation was conducted by DHS and law enforcement, DHS removed all of the Swims' children from the home, including M.E.

¶ 4 In April 2010, the State filed a deprived child action against the Swims on behalf of all of their children and sought termination of the Swims' parental rights. The State also instituted criminal delinquency proceedings against GRS. In May 2010, GRS stipulated to two charges of indecent and lewd acts with a minor child. The State filed felony charges against the Swims in May 2010 alleging the Swims allowed sexual abuse to occur in their home.

¶ 5 GRS was adjudicated as delinquent and placed in the custody of the Oklahoma Department of Juvenile Affairs. The Swims entered a no contest stipulation on behalf of each of their children and worked a treatment plan as to each child. The Swims' children, except GRS, have all been returned to the home. The Swims pled no contest to reduced misdemeanor charges. Mr. Swim received a deferred sentence of one year, which has been discharged. Mrs. Swim received a deferred sentence of five years.

¶ 6 After M.E.'s removal, the Swims were allowed in person and telephone visitation with M.E. By September 2010, the Swims' visitation became more limited and was eventually terminated. The record shows that after her removal M.E. struggled to adjust and had multiple placements, including adoptive placements, fail.

¶ 7 Although the Swims were no longer M.E.'s foster parents, they continued to ap-

pear in M.E.'s juvenile proceedings. In June 2010, the Swims asked the district court to place M.E. back in their home and to allow them to adopt M.E. over the objection of DHS. The district court denied the Swims' requests and recommended the Swims file a competing petition to adopt M.E. In August 2010, the Swims filed a Petition for Adoption of M.E. In October 2010, the Swims filed a motion to consolidate their adoption proceedings with the juvenile proceedings concerning M.E. to which the lawyer for the child (LFC) objected. The motion to consolidate was denied in November 2010.

¶ 8 In October 2010, the Swims filed a Demand seeking proper notice from DHS concerning M.E.'s removal from their home and declaring an intention to object to M.E.'s removal. The Swims sought to compel such formal notice from DHS regarding M.E.'s removal in February 2011. The Swims did not file their objection to DHS's removal of M.E. until May 2011. In October 2011, the Swims filed a motion for the disclosure of DHS records, including the home study previously performed by DHS in preparation for the adoption of M.E. prior to her removal from the home. The Swims also filed motions seeking to compel the deposition testimony of the DHS employees and court appointed special advocates (CASA) involved in M.E.'s juvenile proceedings.

¶ 9 The district court conducted a hearing on October 28, 2011. At the hearing, the district court stated, and all counsel agreed, the Swims' petition for adoption of M.E., which was not initially filed in the juvenile proceedings, had been administratively assigned to the district court and would be properly considered and ruled upon as part of the juvenile proceedings. The parties all agreed the State, DHS, CASA and the LFC would all object to the Swims' adoption of M.E. The LFC argued DHS would no longer provide a favorable home study for the Swims, so any further discovery in the case would be unnecessary. The district court recognized it, not DHS, had the ultimate authority to allow the adoption. DHS questioned whether an approved home study would be necessary to maintain a successful adoption.

¶ 10 The district court questioned the Swims' need for a copy of the prior DHS adoptive home study, as all parties agreed the conditions had changed subsequent to such study. The Swims claimed the prior study, which was to their knowledge completed days before the conduct of GRS was reported by Mrs. Swim, would be relevant to show whether there was any evidence the Swims had knowledge of GRS's behavior prior to the children's removal. The district court agreed if DHS had recently concluded the Swims' home was an excellent environment for M.E. immediately before her removal, such information might be relevant to consideration of the Swims as adoptive parents for M.E.

¶ 11 On November 23, 2011, the LFC filed a motion requesting the district court order a new home study be completed of the Swims' home to determine if they could be considered an adoptive placement by the district court. In such motion, it was confirmed DHS would not approve the Swims as an adoptive placement and would not prepare a favorable home study on their behalf. On November 29, 2011, the LFC filed a motion to dismiss the Swims' Petition for Adoption pursuant to 10 O.S.2001 §§ 7505–3.1 for lack of a completed preplacement home study. In the motion to dismiss, the LFC alleged DHS had never completed an adoptive home study for the Swims in April 2010, and as such the Swims had no standing to pursue adoption of M.E. as required by §§ 7505–3.1, 7505–5.1 and 7505–6.2. The LFC accused the Swims of falsely swearing in their Petition for Adoption that DHS had performed an adoptive home study.

¶ 12 On December 12, 2011, DHS filed a Court Addendum notifying the district court of the status of the Swims' adoptive home study. The Court Addendum indicated corrections to a prior Bridge Home Study of the Swims were being made for use as an adoption home study. Before the corrections were completed, a referral was received regarding the Swims resulting in all of the children being removed. Upon confirmation of the allegations of the referral, the permanency worker, adoption supervisor and permanency planning worker determined M.E. would not

be placed back with the Swims and the adoption home study was being abandoned. The Court Addendum noted DHS sent a letter to the Swims informing them in May 2010 their home had been closed as an adoptive placement.[1] The Court Addendum concluded with: "At no time was there ever a completed adoption home study regarding [M.E.] in the Swim home."

¶ 13 In response to the motion to dismiss, the Swims claimed DHS never informed them the adoptive home study had not been completed in April 2010. The Swims further argued a completed home study was not required before filing a petition to adopt M.E. pursuant to § 7505–3.1(A)(9), because M.E. was not in their physical custody at the time the petition was filed. The Swims also noted that neither § 7505–5.1 nor 7505–6.2 required a completed home study before filing a petition for adoption. They claimed § 7505–5.1 only required a home study be completed before the adoptive parent could accept custody of a minor child, and 7505–6.2 required the updated home study before an adoption could be finalized. The Swims requested the trial court grant the LFC's motion to order a new preplacement home study, as the Swims could find no agency willing to conduct the home study in light of DHS's refusal. The Swims alternatively sought leave to amend their Petition for Adoption to obtain an updated adoptive home study in the event the district court determined a completed home study was a prerequisite to filing the Petition.

¶ 14 The district court granted the LFC's Motion to Dismiss not based on lack of standing but rather based upon lack of the Swims' eligibility to adopt. The district court concluded the Swims were ineligible to adopt M.E. based upon the statutory requirement that a petition for adoption must include verification that a successful preplacement adoption study was completed and filed with such petition. The district court further denied the Swims' request to amend their Petition. It is from this Order the Swims instituted the present appeal.

1. Nothing in the May 2010 letter to the Swims suggested that the adoptive home study for M.E. had not been completed. The letter simply stat-

## STANDARD OF REVIEW

¶ 15 In reviewing the district court's order dismissing the Swims' Petition, the standard of review is *de novo*. *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894. "A motion to dismiss for failure to state a claim upon which relief can be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief." *Id.* "If relief is possible under any set of facts which can be established and are consistent with the allegations, a motion to dismiss should be denied." *Id.*

## ANALYSIS

¶ 16 The crux of this appeal lies in the statutory interpretation of 10 O.S.2001 § 7505–3.1(A)(9). "Legislative acts are to be construed in such manner as to reconcile the different provisions and render them consistent and harmonious, and give intelligent effect to each." *Eason Oil Co. v. Corp. Comm'n*, 1975 OK 14, ¶ 9, 535 P.2d 283, 286.

> The primary goal of statutory construction is to ascertain and follow legislative intention. When the Legislature has clearly expressed its intent, the use of additional rules of construction are almost always unnecessary and a statute will be applied as written. In other words, the plain meaning of a statute's language is conclusive except in the rare case when literal construction produces a result demonstrably at odds with legislative intent.

*Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 13, 33 P.3d 302, 307. "We presume that the Legislature intends what it expresses." *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, ¶ 5, 901 P.2d 800, 803.

¶ 17 The district court's dismissal of the Swims' Petition for Adoption was based upon its interpretation of 10 O.S.2001 § 7505–3.1(A)(9), which reads:

> A petition for adoption shall be verified by the petitioner, and shall specify:

ed in relevant part: "This letter is to serve as notice of the closure of your adoptive home by the Oklahoma Department of Human Services."

\* \* \* \*

9. That a copy of the preplacement home study completed pursuant to subsection A of Sections 7505–5.1 and 7505–5.3 of this title is attached to or filed with the petition. If the preplacement home study has not been completed, the petition shall specify that a waiver has been signed by a court pursuant to subsection B of Section 7505–5.1 of this title, and that a copy of the waiver is attached to or filed with the petition; or shall include a statement regarding why the preplacement home study is not required pursuant to subsection C of section 7505–5.1 of this title; or shall specify that the minor is not yet in the physical custody of the petitioner.

The district court concluded § 7505–3.1(A)(9) required an adoptive home study be completed before the Swims could file their Petition for Adoption, finding the adoptive home study was a prerequisite to be eligible to seek adoption. The clear language of § 7505–3.1(A)(9) indicates three instances in which completion of a preplacement home study is not required: (1) a waiver has been signed by the court; (2) the minor is placed with a relative for the purposes of adoption; or (3) the minor is not yet in the physical custody of the prospective adoptive parent.[2]

¶ 18 Consideration of other sections of the Adoption Code concerning preplacement home studies is also instructive in this matter. Section 7505–5.1 governs the requirements of a preplacement home study, and subsection (A) delineates the purpose for which such home study must be performed:

Except as otherwise provided in this section, only a person for whom a favorable written preplacement home study has been prepared may accept custody of a minor for purposes of adoption. A preplacement home study is favorable if it contains a finding that the person is suited to be an adoptive parent, either in general or for a particular minor, and it is completed or brought current within twelve (12) months

next preceding a placement of a minor with the person for adoption.

10 O.S.Supp.2009 § 7505–5.1(A). Nothing in § 7505–5.1 suggests the preplacement home study is required before filing a petition for adoption. The home study must only be completed prior to a prospective parent accepting physical custody of a minor and must be completed or brought current within 12 months before the placement of the minor child with such individual. Section 7505–5.2 states in part:

A. If a preplacement home study is waived by the court for good cause shown or is not required by Section 29 of this act, the court, upon the filing of a petition for adoption, shall order that a home study be made and filed with the court by the designated investigator within the time fixed by the court, and in no event more than sixty (60) days from the issuance of the order for the home study, unless the time therefor is extended by the court.

\* \* \* \*

In all other adoptions, including foster, relative, and stepparent adoptions, a home study and report shall be made pursuant to this section or Section 29 of this act.

10 O.S.2001 § 7505–5.2. Title 10 O.S.Supp. 2002 § 7505–6.2(A) requires the filing of certain documents prior to the final hearing on the petition for adoption, including:

5. A copy of any home study performed on the petitioners, including the home studies required by Sections 7505–5.1, 7505–5.2 and 7505–5.3 of this title. . . .

10 O.S.Supp.2002 § 7505–6.2(A)(5).

■ ¶ 19 In consideration of 10 O.S.2001 § 7505–3.1(A)(9) in conjunction with §§ 7505–5.1, 7505–5.2, and 7505–6.2, there exists no requirement that a preplacement home study be performed before a petition for adoption is filed. The aforementioned statutes only require that the preplacement home study be performed before a minor

2. Title 10 O.S.Supp.2007 § 7505–5.1 as referenced in 10 O.S.2001 § 7505–3.1(A)(9) was amended in 2009. The 2009 amendment to § 7505–5.1 eliminated subsection (B) discussing the court's authority to grant a waiver for good cause shown. Section 7505–5.1(C) has thus been renumbered to subsection (B). Despite this 2009 amendment to § 7505–5.1, the 2011 amendment to § 7505–3.1(A)(9) did not incorporate such changes and thus makes inaccurate references to § 7505–5.1(B) and (C).

child is placed in the physical custody of a prospective adoptive parent and filed prior to the final hearing on the petition for adoption.

■ ¶ 20 Accordingly, the district court erred in dismissing the Swims' Petition for Adoption for lack of eligibility to adopt based upon the absence of a completed home study pursuant to 10 O.S.2001 § 7505–3.1(A)(9). The Swims' eligibility to adopt M.E. cannot be conclusively determined without a pre-placement adoptive home study. In accordance with 10 O.S.2001 § 7505–5.2(A), the district court upon receipt of the Swims' Petition for Adoption of M.E. had the duty to order a preplacement home study be conducted to determine the issue of eligibility. DHS admittedly refused to complete the adoptive home study for the Swims. Thus, the district court was required to order the adoptive home study be completed by any agency or individual as approved by 10 O.S. 2001 § 7505–5.4. Because this Court determines dismissal of the Swims' Petition for Adoption was improper pursuant to 10 O.S. 2001 § 7505–3.1(A)(9), the Swims' second allegation of error regarding the district court's refusal to grant them leave to amend their Petition need not be addressed.

¶ 21 On remand, if an adoptive home study concludes the Swims are not suitable adoptive parents for M.E., the Swims would not be eligible to adopt and denial of their Petition would be appropriate. Conversely, if a home study determines the Swims are a suitable adoptive family, the district court must then make a best interest of the child determination regarding the Swims' request to adopt M.E. over the objection of DHS.

¶ 22 The remaining issues raised by the Swims were never ruled upon by the district court, and thus may be raised by the Swims on remand.

¶ 23 DHS filed a Motion to Dismiss the Swims' appeal claiming the Swims were not aggrieved by the district court's dismissal of their Petition for Adoption. DHS further argued the Swims lacked standing because their Petition for Adoption was filed in a separate action, not in the juvenile proceedings. DHS also suggested the Swims' appeal constituted a non-justiciable controversy ar-guing the Swims could simply re-file their Petition to adopt M.E.

¶ 24 Division II of the Oklahoma Court of Civil Appeals addressed the issue of standing in *In Re Adoption of I.D.G.*, 2002 OK CIV APP 22, 42 P.3d 303:

> "Standing refers to a person's legal right to seek relief in a judicial forum." It questions whether a litigant has "suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions." "[T]he focus is on the party seeking to get his complaint before the court and not on the issues he wishes to have adjudicated."

*Id.* ¶ 11, 42 P.3d at 306 (citations omitted). The Oklahoma Supreme Court has repeatedly held:

> [F]oster parents who are also persons *in loco parentis* have standing to intervene as a matter of right and assert their justiciable interest in an adoption proceeding, and that the right has been extended in other jurisdictions to custody proceedings as well. We held that the foster parents had been given statutory standing and due process rights which allowed full participation in the custody proceedings....

*Skrapka v. Bonner*, 2008 OK 30, ¶ 14, 187 P.3d 202, 209.

■ ¶ 25 Title 10A O.S.Supp.2009 § 1–4–101(A)(2)(e) provides: "the judge presiding over a deprived action shall have the authority to make a final determination in the matter and preside over any separate action necessary to finalize a child's court-approved permanency plan including an adoption, guardianship, or other custody proceeding." At the October 2011 hearing, the district court questioned specifically whether the Swims' Petition for Adoption was properly before the court.

> THE COURT: Is there anyone here that contests that due to the pendency of this JD file, that trumps any ability of the downtown divisions to handle that adoption because of the pendency of this petition? Isn't that correct? Everybody agrees with that?

> MR. DEWEY: Yes.

MS. COHLMIA: Everybody agrees with that.

\* \* \* \*

MS. CALLAWAY: Well, I thought they were filed that way and then there's an administrative order that automatically directs them to the juvenile court system.

THE COURT: That may be correct, Ms. Callaway. That is far beyond my experience downtown, so—

MS. COHLMIA: Well, that would make sense. That's why it has the FA number.

MS. CALLAWAY: And then—but then they're transferred to juvenile.

THE COURT: All right. So we're making some headway. And if that is, in fact, correct, Ms. Callaway—and that seems logical.

MS. CALLAWAY: Uh-huh.

THE COURT: Because I think we're all in concurrence, that would have to be determined here—

MS. CALLAWAY: Yes.

THE COURT:—due to the pendency of this JDL–614—

MS. CALLAWAY: Yes.

THE COURT:—from 2007, that that be heard here. So what we have then—and I'm trying to clarify these issues because, quite frankly, I don't know that we've done it this way.... But the pendency of that application for adoption is then vested along with the conclusion of this JDL file. Does the State and the Department agree with that?

MS. CALLAWAY: I'm sorry, Your Honor, I didn't hear the first part.

THE COURT: Does the resolution of the pending adoption petition, followed under the FA matter, that is probably administratively presented in this file—I'm going to—that sounds logical to me. Let the record reflect I don't have personal knowledge of that, but it seems like that would be a proper and logical avenue for such a circumstance. But under those—under that scenario, then that application of the Swims, for their request to be considered to be the adoptive parents, does then exist, along with the ongoing duty of this venue to determine and provide the proper placement and ultimate adoption for this child?

MS. CALLAWAY: Yes.

Based upon the agreement and representations of counsel for DHS, the State, the LFC and the Swims, the district court in effect consolidated the Swims' Petition for Adoption with the juvenile proceedings concerning M.E. Because the district court with consent of all parties, including DHS, consolidated the Swims' Petition for Adoption and the juvenile proceedings, the Swims had standing to pursue adoption of M.E. and appeal the dismissal of their Petition in accordance with *I.D.G.* Accordingly, DHS waived any objection to the Swims' Petition for Adoption based upon a lack of standing.

¶ 26 Finally, DHS claims the district court's dismissal of the Swims' Petition was without prejudice, thus the Swims can simply file a new petition for adoption. DHS further argues resort to the appellate process was unnecessary, as the Swims simply need to pursue adoption of M.E. properly. Had the district court dismissed the Swims' Petition for lack of standing as in *I.D.G.*, DHS would be correct. As discussed above, the district court in effect consolidated the Swims' Petition for Adoption with the juvenile proceedings; thus, the Swims' Petition was properly brought before the district court. The Oklahoma Supreme Court has declared:

An order is final within the meaning of 12 O.S.1991 § 953 if it *prevents judgment* upon the process in progress, even though the aggrieved party would have been free to abandon the course then in pursuit to relaunch or press the same claim along a different remedial track. Through this conceptual analysis included in the class of orders that are treated in law as having prejudgment finality are those that (a) quash process and (b) those that dismiss the action *sans prejudice*, although the former do not inhibit the issuance of alias process and the latter leave the plaintiff free to bring another suit. Other examples for the same appealability analysis are: (c) a suit's termination "otherwise than on the merits," is deemed appealable although the suit may be refiled....

*Gilliland v. Chronic Pain Assoc.*, 1995 OK 94, ¶ 7, 904 P.2d 73, 76. Title 10 O.S.2001 § 7505–7.1(A) states:

> An appeal may be taken from any final order, judgment, decree, or any order determining a minor eligible for adoption without terminating parental rights rendered pursuant to the Oklahoma Adoption Code to the Supreme Court by any person aggrieved thereby, in the manner provided for appeals from the court as provided in this section.

The Swims were free to appeal the dismissal of their Petition for Adoption or attempt to institute new proceedings in M.E.'s juvenile case. The Swims' properly instituted their appeal of the district court's dismissal of their Petition for Adoption. Accordingly, the Motion to Dismiss Appeal filed by DHS is denied.

## CONCLUSION

¶ 27 The Motion to Dismiss Appeal filed by DHS is denied. The order of the district court dismissing the Swims' Petition for Adoption of M.E. pursuant to 10 O.S.2001 § 7505–3.1(A)(9) is reversed and remanded for further proceedings consistent with this Opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, V.C.J., and WISEMAN, J., concur.