IN THE MATTER OF THE ADOPTION OF L.F.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE ADOPTION OF L.F.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE ADOPTION OF L.F.
2019 OK CIV APP 40
Case Number: 117116
Decided: 06/19/2019
Mandate Issued: 07/17/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 40, __ P.3d __

 

IN THE MATTER OF THE ADOPTION OF L.F. and B.F., minor children,

MATTHEW DAVID SEAY and FARRAH EVENING SEAY, Appellants,
v.
STATE OF OKLAHOMA ex rel. DEPARTMENT OF HUMAN SERVICES, Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DORIS L. FRANSEIN, TRIAL JUDGE

AFFIRMED

Catherine Z. Welsh, Jim C. McGough, Mark A. Zannotti, Matthew J. Hall, Rachel J. Ellsworth, WELSH & McGOUGH, PLLC, Tulsa, Oklahoma, for Appellants

Bonnie Clift, DEPUTY GENERAL COUNSEL, OKLAHOMA DEPARTMENT OF HUMAN SERVICES, Oklahoma City, Oklahoma and Larisa Grecu-Radu, ASSISTANT GENERAL COUNSEL, OKLAHOMA DEPARTMENT OF HUMAN SERVICES, Tulsa, Oklahoma, for Appellee

Adam Barnett, ASSISTANT TULSA COUNTY PUBLIC DEFENDER, Tulsa, Oklahoma, for the Minor Children

JANE P. WISEMAN, VICE-CHIEF JUDGE:

¶1 Appellants Matthew David Seay and Farrah Evening Seay appeal the juvenile court's dismissal of their application to set the matter for a best interests hearing and the dismissal of their petition for adoption of minor children. After review of the record and applicable law, we affirm the court's order.

FACTS AND PROCEDURAL BACKGROUND

¶2 On December 12, 2016, DHS obtained emergency legal custody of the minor children as stated in an emergency order issued pursuant to 10A O.S § 1-4-201(D) by the Tulsa County District Court in Case No. JD-2016-594 (deprived case or court). On December 28, 2016, DHS filed a deprived petition requesting immediate termination of parental rights. On April 25, 2017, the parents stipulated to the allegations of the "State's offer of proof" and the minor children, LF and BF, were adjudicated deprived based on heinous and shocking neglect and placed in DHS's temporary legal custody. Both parents also waived jury trial.[1]

¶3 According to the "placement agreement for out-of-home care," on December 16, 2016, DHS placed LF and BF in the foster home of Matthew and Farrah Seay--i.e., Appellants currently seeking the adoption of the children. On June 14, 2017, Appellants received a "Notice of Child's Removal from Out-of-Home Placement" stating the children would be removed from their foster care on June 22, 2017, to be placed in a kinship home. On June 20, 2017, Appellants filed an objection to the removal of the children from their foster home "pursuant to 10A O.S. § 1-4-805," and on June 21, 2017, Appellants filed an amended objection. After a hearing in July 2017, the trial court in the deprived case overruled Appellants' objection to removal by DHS finding "that the move by DHS was not arbitrary, contrary to the permanency plan of the children and is in the best interests of the children." Appellants did not appeal this ruling. DHS removed the children from Appellants' foster home and placed them with a relative where they, according to DHS's appellate brief, still remain.

¶4 On September 1, 2017, Appellants filed a petition to adopt the children in Tulsa County District Court Case No. FA-2017-338 (adoption case or court). That same day, Appellants filed in the deprived case an application for temporary injunction asking the deprived court to prohibit the removal of the children from Oklahoma because they had filed a petition for adoption in the adoption case and would "likely prevail in obtaining a Decree of Adoption" as the children's parents had agreed to the adoption. On September 6, 2017, the deprived court denied the application for temporary injunction stating:

Specifically, the children are still in the temporary custody of the Department of Human Services as the parental rights of the above-referenced children have not been terminated. The non-jury trial on the issue of immediate termination has not as yet been conducted. Therefore, any petition for adoption is premature and not before the court.

Further, whether the natural parents "agree to consent to the adoption by the Adoptive Parents" is irrelevant for the reason that if the rights of the natural parents are terminated pursuant to the non-jury trial, any ability for the natural parents to consent to the adoption by the Seays are [sic] extinguished as a matter of law. It is the consent from the Department of Human Services that is to be obtained and considered by the Court.

Lastly, the likelihood that the Seays will prevail in their Petition for Adoption is questionable considering that the Court approved the removal of the above-referenced children by DHS from the Seays' home for placement in the current foster home.

In September 2017, the minor children's parents consented to the adoption by Appellants.

¶5 On October 17, 2017, DHS filed a "special limited appearance, advice of pending deprived action and automatic stay of action" in the adoption case advising the court of the pending deprived action, that the deprived court had not given consent for the adoption court to exercise jurisdiction over the children, and an automatic stay was therefore required pursuant to 10A O.S. § 1-4-101(A)(2).

¶6 On November 1, 2017, the adoption court entered a court minute finding "The hearing for final decree is stricken and stayed. The matter should be heard at juvenile."

¶7 In an order filed February 20, 2018, following a non-jury trial, the deprived court terminated the parents' rights to LF and BF and placed them in DHS's permanent custody "to make reasonable efforts to finalize the plan of adoption." The final order of judgment for approval as to form was filed March 29, 2018.

¶8 On February 27, 2018, Appellants filed their "application for setting of best interest." The trial court set the application for hearing, but only for purposes of determining "the legal issues of jurisdiction and [Appellants'] standing to adopt" and directing the parties to submit briefs. On March 13, 2018, DHS filed a "motion to intervene and to dismiss application for setting best interest" to which Appellants responded.

¶9 Following a hearing in May 2018, the deprived court granted DHS's motion and dismissed the adoption proceeding after determining Appellants lacked "standing to pursue adoption in a separate proceeding" without consent of the deprived court. If further concluded:

IT IS THEREFORE THE FINDINGS AND ORDER OF THE COURT that the [Appellants'] Application to set the above-entitled matter for a best interests hearing be dismissed. Further, because [Appellants] are found to lack standing to pursue adoption of the children in the above-entitled separate proceeding and have attempted to do so without the consent of this Court, who maintains the jurisdiction of the children, the above entitled adoption proceeding should be dismissed.

Appellants appeal.

STANDARD OF REVIEW

¶10 "In reviewing the district court's order dismissing [Appellants'] [p]etition, the standard of review is de novo." In re Adoption of M.E., 2013 OK CIV APP 18, ¶ 15, 296 P.3d 1267 (citing Miller v. Miller, 1998 OK 24, ¶ 15, 956 P.2d 887).

ANALYSIS

I. Jurisdiction

¶11 Appellants assert that given the facts of this case, the adoption court did not lack subject matter jurisdiction to proceed with the adoption even though the children were the subjects of an open deprived proceeding in the deprived court.

¶12 The Oklahoma Children's Code sets forth and explains the court's subject matter jurisdiction over a deprived child when determining custody, support, or visitation:

A. 1. Upon the filing of a petition, the assumption of the custody of a child, or issuance of an emergency custody order pursuant to the provisions of the Oklahoma Children's Code, the district court shall obtain jurisdiction over any child who is or is alleged to be deprived. Jurisdiction shall also be obtained over any parent, legal guardian, or custodian of and any other person living in the home of such child who appears in court or has been properly served with a summons pursuant to Section 1-4-304 of this title.
2. When jurisdiction has been obtained over a child who is or is alleged to be a deprived child:
. . . .
c. all other action then pending or thereafter commenced within the county or state that concerns the custody, support, or visitation of the child shall be automatically stayed unless after notice to the parties in the deprived action, the written consent of such court is obtained and filed in the other proceeding; provided, a child's delinquency action may, in the discretion of the court, proceed pursuant to the Oklahoma Juvenile Code,
d. all orders entered in the deprived proceeding concerning the custody, support, or visitation of a child shall control over conflicting orders entered in other actions until such time as the jurisdiction of the court in the deprived proceeding terminates, and
e. the judge presiding over a deprived action shall have the authority to make a final determination in the matter and preside over any separate action necessary to finalize a child's court-approved permanency plan including an adoption, guardianship, or other custody proceeding.

10A O.S.2011 § 1-4-101(A)(1),(2)(c-e)(emphasis added). The Children's Code establishes when the deprived court's jurisdiction terminates:

If the court terminates the rights of a parent and places the child with an individual or agency, the court may vest in such individual or agency authority to consent to the adoption of the child. Provided, that when the court places the child with the Department of Human Services, it shall vest the Department with authority to place the child and, upon notice to the court that an adoption petition has been filed concerning the child, vest the Department with authority to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate upon a final decree of adoption.

10A O.S.2011 § 1-4-907 (emphasis added). The legislative intent in 10A O.S. Supp. 2018 § 1-1-102(B)(7) states that one reason for promulgating such laws for deprived children is to "[e]nsure that . . . the child will be placed in an adoptive home or other permanent living arrangement in a timely fashion."[2] As the deprived court stated in this case: "Further the legislative intent that the court in the Deprived action continue its oversight in finalizing the permanency plan for a child (i.e., reunification, adoption, guardianship, or planned alternative placement) is found in 10A O.S. 1-4-811(D)." This provision states in part:

At the hearing, the court shall determine or review the continued appropriateness of the permanency plan of the child and whether a change in the plan is necessary, the date by which the goal of permanency for the child is scheduled to be achieved, and whether the current placement of the child continues to be the most suitable for the health, safety, and welfare of the child.

10A O.S. Supp. 2018 § 1-4-811(D).[3]

¶13 Our review of these statutes leads us to only one conclusion: that the deprived court had controlling jurisdiction over the minor children, thus prohibiting the adoption court from proceeding in a separate action without the deprived court's written consent. We agree with the deprived court's order explaining how its decision follows the statutes' legislative intent:

As previously cited by this Court, 10A O.S. [§] 1-4-101(A)(2) is clear in its intent that finalization of custody, child support and visitation affecting an alleged or adjudicated deprived child cannot proceed in another court--even within the same judicial district--without the juvenile court's consent. This ensures there are not competing court orders; that the child safety threats are not overlooked by another court; that the child's judicially determined permanency plan is not overlooked or disregarded in another judicial venue; or that an individual independently attempts to bypass the juvenile court's oversight by seeking custody of the child in another court ignorant of the allegations/facts in the Deprived action. The juvenile court is permitted to finalize the permanency plan within its court OR may knowingly consent to allow another venue/division to finalize the approved plan.

In this instant Deprived action, the [Appellants] did not seek the express written consent of this Court. Hence [the adoption court] lacked jurisdiction over these children and any action taken to finalize the adoption within the Probate Division was stayed and [is] now voidable.

Appellants failed to obtain written consent from the deprived court, and the deprived court maintained controlling jurisdiction over the children during the pendency of the deprived action.

II. Standing

¶14 Appellants argue the trial court erred in determining they had no legal standing to bring a separate action to adopt the children. They assert they had standing to file an adoption petition "when (1) [they] are prior foster parents and have received the natural parents' consent to adopt, and (2) the minor children are the subjects of a deprived proceeding under the Oklahoma Children's Code."

¶15 As stated in In re Adoption of I.D.G., 2002 OK CIV APP 22, ¶ 12, 42 P.3d 303 (quoting Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 16, ¶ 3, 976 P.2d 545), standing is comprised of three elements:

(1) A legally protected interest which must have been injured in fact--i.e., an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.

(Emphasis omitted.) "An initial inquiry into standing must reveal, among other things, that 'the interest to be guarded is within a statutorily or constitutionally protected zone.'" In re Adoption of I.D.G., 2002 OK CIV APP 22, ¶ 12 (quoting Hendrick v. Walters, 1993 OK 162, ¶ 5, 865 P.2d 1232).

¶16 In In re Adoption of I.D.G., 2002 OK CIV APP 22, 42 P.3d 303, DHS placed the minor child in foster care with petitioners after being removed from the home. Id. ¶ 2. I.D.G. was placed "with [p]etitioners because the foster home where his siblings were already living was full." Id. The natural parents' rights were terminated. Id. I.D.G. stayed with petitioners for 10 months but was then removed from the home "for reasons unrelated to their care of him." Id. ¶ 3. Petitioners then "filed a petition to adopt I.D.G., acknowledging that he was in DHS custody and was the subject of an ongoing deprived proceeding." Id. ¶ 4. Then petitioners "filed applications to have the court appoint counsel for I.D.G. and for a temporary restraining order to prevent DHS from placing him with any other prospective adoptive family." Id. ¶ 5. Petitioners argued "[t]hey filed these applications because of DHS's plan to place I.D.G. in an adoptive home with his siblings." Id.

¶17 DHS filed an objection to the adoption petition "in conjunction with a motion to consolidate the petition with the ongoing deprived proceeding." Id. ¶ 6. Petitioners objected to these motions. Id. The trial court dismissed the petition for adoption. Id. ¶ 8. In addressing the standing issue, the Court on appeal concluded:

I.D.G. lived with Petitioners for ten months. While this is not an insignificant period of time, particularly in the course of a very young life, it does not convey upon Petitioners the right, independent of their contractual right as foster parents, to control the ultimate placement of I.D.G. Petitioners' rights as foster parents are set out in contract and statutes. Petitioners undoubtedly had standing to contest DHS's decision to remove I.D.G. from their home, but they do not have standing to pursue his adoption in a separate proceeding initiated outside of the deprived proceeding and after I.D.G. was removed from their home.

Id. ¶ 15. The Court noted that the Oklahoma Supreme Court has determined that "foster parents had standing to intervene in--not initiate--an adoption proceeding as in loco parentis, where they had been foster parents for seven years and had received repeated assurances from DHS that they would be able to adopt the child." Id. ¶ 14 (citing In re B.C., 1988 OK 4, ¶ 20, 749 P.2d 542).

¶18 The Court further noted that "under the current statutory scheme, foster parents have the statutory right to be considered as potential adoptive parents and, if the child has lived with them for twelve months or more, 'great weight' should be given to their desire to adopt." Id. (quoting 10 O.S. Supp. 2000 § 7003-5.6h now renumbered as 10A O.S. § 1-4-812).

¶19 The Court concluded that although "[p]etitioners could have intervened in the deprived child proceeding to assert their rights as foster parents and press their desire to be adoptive parents, . . . [t]hey chose not to do so." Id. ¶ 22. The court added that "[i]f [p]etitioners had no interest in adopting I.D.G., they would not need to be a party to the deprived proceedings. However, since they did have such an interest, they should have joined the proper proceedings, rather than attempting to create a new one." Id. ¶ 23. Because petitioners pursued the "wrong process," the issue was not ripe for determination and the trial court could not consider the child's best interest when it was not a "proper adoption case to begin with." Id.

¶23, 25. The Court determined that petitioners lacked standing to pursue the adoption in a separate proceeding. Id. ¶ 28.

¶20 Appellants in the present case are no longer foster parents to the children and have not been foster parents to them since their removal in July 2017. Pursuant to 10A O.S. Supp. 2018 § 1-4-807(B)[4]:

If a foster parent, group home, preadoptive parent, or relative is currently providing care for a child, the Department shall give the foster parent, group home, preadoptive parent, or relative notice of a proceeding concerning the child. A foster parent, group home representative, preadoptive parent, or relative providing care for a child has the right to be heard at the proceeding. Except when allowed to intervene, the foster parent, group home, preadoptive parent, or relative providing care for the child is not considered a party to the juvenile court proceeding solely because of notice and the right to be heard at the proceeding.

¶21 As noted by the deprived court, Appellants never attempted "to intervene in the deprived matter although it is doubtful this Court would permit their permissive intervention having previously approved the removal of the children from their home for placement with relatives. Therefore, [Appellants], having not pursued adoption in the [d]eprived action and knowing that it was ongoing, lack standing to pursue adoption in a separate proceeding." This is to say that Appellants failed to establish a "likelihood, as opposed to mere speculation, that the injury would be redressed by a favorable decision." In re Adoption of I.D.G., 2002 OK CIV APP 22, ¶ 12.

¶22 Although they had certain contractual and statutory rights set forth above, we agree with the deprived court's determination that Appellants could not pursue adoption of the children in a separate proceeding. Although Appellants objected to the children's removal from their home and participated in a hearing, Appellants did not intervene in the deprived action to assert their right to adopt as foster parents.

¶23 The deprived court also determined that the parents' consent provided to Appellants did not affect its decision. "The [Appellants] argue that: 'the natural parent[s'] consent to adoption was specifically limited to the [Appellants]. The [Appellants] are the only individuals to whom the natural parents have given their consent to adopt these minor children . . . .'" The deprived court correctly addressed this question:

Consent, or voluntary agreement, to the termination of parental rights in a deprived child action is specifically provided for in 10A O.S. [§] 1-4-904(B)(1).[5] The [parents] provided a consent to adoption pursuant to the Adoption Code, 10 O.S. [§] 7503-2.1. The effect of a consent to the termination of parental rights terminates, in part, the necessity of a parent to consent to the adoption of their child. 10A O.S. [§] 1-4-907 specifically grants to the Deprived Court the right to place a child with an individual or agency and vests in that individual or agency the authority to consent to the adoption of the child. The [parents], at the time of their consent to the adoption of their children, were limited in actions they could take with respect to their children's custody. The children were in the temporary custody of DHS and wards of this Court as Deprived children. The [parents] were awaiting the termination of parental rights trial. The provisions of the Adoption Code were not applicable. And no authority exists within the Children's Code [permitting] a parent to dictate the placement of a child for adoption purposes. . . . . Therefore, the specific statutory procedures found within the Children's Code, a special proceeding that may ultimately result in the use of the Adoption Code for purposes of finalizing the adoption of a Deprived child, applies. The foster parents may not circumvent the authority of DHS and ultimately this Court to determine the permanent placement of these children for purposes of adoption.

¶24 We agree with the deprived court that because the adoption court lacked jurisdiction and Appellants lacked standing to initiate a separate adoption proceeding, the deprived court correctly dismissed both Appellants' application to set the matter for a best interests hearing and their petition for adoption. Appellants, like petitioners in I.D.G., pursued the "wrong process" for adopting the minor children, and the adoption proceeding was not proper from the outset. And, the deprived court properly refused to consider the parents' consent in the adoption proceeding in making its determination.

¶25 For the reasons given in this Opinion, we affirm the deprived court's decision.

CONCLUSION

¶26 The order of the deprived court is affirmed.

¶27 AFFIRMED.

BARNES, P.J., and RAPP, J., concur.

FOOTNOTES

[1] According to the order on appeal, the children's parents were convicted "on five [5] counts of [c]hild [n]eglect by jury trial in Tulsa County District Court in Case No. CF-16-6855, each parent was sentenced on November 13, 2017 to a total of 130 years. The conviction is currently being appealed."

[2] This statute was last amended on November 1, 2014, and is the same version in effect at the time of these proceedings.

[3] This statute was last amended on November 1, 2015, and is the same version in effect during these proceedings.

[4] This statute was last amended on November 1, 2015, and is the same version in effect during these proceedings.

[5] Section 1-4-904(B)(1) states that, "The court may terminate the rights of a parent to a child based upon the following grounds: (1) Upon the duly acknowledged written consent of a parent, who voluntarily agrees to termination of parental rights." 10A O.S. Supp. 2018 § 1-4-904(B)(1).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 22, 42 P.3d 303, IN RE ADOPTION OF I.D.G.
Discussed at Length
 2013 OK CIV APP 18, 296 P.3d 1267, IN THE MATTER OF THE ADOPTION OF M.E.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 4, 749 P.2d 542, 59 OBJ 182, B.C., Matter of
Discussed
 1993 OK 162, 865 P.2d 1232, 65 OBJ 33, Hendrick v. Walters
Discussed
 1998 OK 24, 956 P.2d 887, 69 OBJ 1172, MILLER v. MILLER
Discussed
 1999 OK 16, 976 P.2d 545, 70 OBJ 778, Cities Service Co. v. Gulf Oil Corp.
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 7503-2.1, Consent to Adoption
Discussed
Title 10A. Children and Juvenile Code
 Cite
Name
Level

 10A O.S. 1-4-101, Jurisdiction - Temporary Order - Interlocutory Relief - Conflicting Orders - Venue - Transfer of Proceedings
Discussed at Length
 10A O.S. 1-1-102, Legislative Intent - Purpose
Cited
 10A O.S. 1-4-812, Eligibility of Foster Parent to Adopt - Factors to be Considered by Court
Cited
 10A O.S. 1-4-201, Child Taken into Custody Prior to Filing of Petition - Prepetition Emergency Custody Orders
Cited
 10A O.S. 1-4-904, Termination of Parental Rights in Case Involving Petition for Deprived Status of Child
Discussed at Length
 10A O.S. 1-4-807, Periodic Review Hearings - Review of Case Regarding Child Alleged or Adjudicated to be Deprived - Notice to Foster Parent, Preadoptive Parent, or Relative - Findings
Cited
 10A O.S. 1-4-805, Child in Custody of Department or Child-Placing Agency for More than Three Months - Removal - Change of Foster Placement
Cited
 10A O.S. 1-4-907, Placement With Individual or Agency - Authority to Consent to Adoption - Effect of Final Decree of Adoption
Discussed at Length
 10A O.S. 1-4-811, Permanency Hearing
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA