1999 OK 16

**CITIES SERVICE COMPANY, now OXY USA, Inc., Appellee,**

v.

**GULF OIL CORPORATION, now Chevron USA, Inc., and GOC Acquisition Corporation, Defendants,**

**D. Richard Funk and John T. Schmidt, Appellants.**

**No. 87,964.**

Supreme Court of Oklahoma.

March 2, 1999.

W. DeVier Pierson, Knox Bemis, and Peter J. Levin of Pierson Semmes and Bemis, Washington, D.C., and Sam P. Daniel, Jr., and Dallas E. Ferguson of Doerner, Saunders, Daniel & Anderson, Tulsa, Oklahoma, for appellee.

Randolph L. Jones, Jr., Peter B. Bradford and Bruce W. Freeman of Conner & Winters, Tulsa, Oklahoma, for appellants.

LAVENDER, J.

¶ 1 The threshold and determinative issue in this cause is whether under the facts and circumstances, *particular to this case*, the appellants have standing to challenge a trial judge's bench rulings which [by way of sanction] limited their participation in proceedings then pending before her court. For reasons delineated below, we determine that Richard Funk and John T. Schmidt [lawyers or appellants] do lack standing and dismiss their appeal with prejudice to renewal.

I

## FACTS AND PROCEDURAL HISTORY

¶ 2 Appellants represent Gulf Oil Corporation, now Chevron USA, Inc. [Gulf

Oil], a defendant below, in a case whose central issue was whether an acquisition agreement between its client and Cities Service Company, now OXY USA, Inc. [Cities Service] had been breached. After perceiving violations of the trial court's orders in limine the trial judge imposed first on Funk and then on Schmidt sanctions which restricted the manner in which they could represent their client during the trial.[1] Although the trial judge characterized the lawyers' courtroom behavior as "contemptuous", she never formally held them in contempt nor did she impose monetary fines on either of them, *i.e.*, her rulings bore no criminal connotations and were in all events *non-monetary*. Appellants seek review of the imposed sanctions, asserting that the judge's orders—which [along with her comments] were reported by the local media—caused harm to their professional reputations.[2] Cities Service posits that the appellants' interests were not injured which raises the issue of their standing to bring this appeal.[3]

## II

### THE STANDING ISSUE

#### A

#### ITS COMPONENTS

¶3  At a minimum standing is composed of three elements. These components

are: (1) a legally protected interest which must have been injured in fact—*i.e.*, an injury which is actual, concrete and not *conjectural* in nature, (2) a *causal* nexus between the injury and the complained of conduct, and (3) a *likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.*[4]

¶4  *Aggrieved status* is limited to those persons (a) whose pecuniary interest in a protected right is directly and injuriously affected or (b) whose rights in property are either "established or divested" by the trial court's rulings.[5] The complained of harm must be *substantial and immediate* as opposed to contingent.[6]

¶5  Finally, assessment of standing is not a decision on the case's merits. Rather it is a determination whether the plaintiff is the proper party to seek adjudication of the asserted issue.[7]

#### B

#### ASSESSMENT OF FUNK AND SCHMIDT'S STANDING

¶6  Oklahoma's extant jurisprudence recognizes that a party's legal counsel has standing, separate from his client, to appeal an order which imposes a *monetary* sanction

1. Judge Shallcross first precluded Funk from questioning witnesses and later denied his participation in closing arguments. Nonetheless, he was allowed to remain at counsel's table and assist the defense team.

   The conduct for which Schmidt was sanctioned occurred late in his closing argument. His sanction included being stopped from concluding his remarks and further being barred from all post-trial proceedings in the case.

2. In their brief the appellants take umbrage with what they termed "vilifying" comments directed toward them by the trial judge during the proceedings. In reviewing the submitted portions of the proceeding's transcript, it appears that these comments are at best the trial judge's reflections on the lawyers' compliance with her earlier orders in limine and pre-trial rulings. Although the characterizations may be harsh, they, by themselves, are not court orders and do *not* rise to the level of formal sanctions. Hence, these

bare comments do not constitute appealable events. *See* the terms of 12 O.S.1993 § 696.3 for the required characteristics of an appealable order.

3. *See* Cities Service's Response to Petition in Error, exh.  A.

4. *Toxic Waste Impact Group, Inc. v. Leavitt*, 1994 OK 148, 890 P.2d 906 (1995); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351· (1992).

5. *Toxic Waste*, supra note 4 at 910; *Missouri–Kansas–Texas R. Co. v. State*, 1985 OK 108, 712 P.2d 40, 42; *Cleary Petroleum Corp. v. Harrison*, 621 P.2d 528, 530 (1980).

6. *Id.* at 42–43.

7. *Toxic Waste*, supra note 4 at 910.

against him/her personally.[8] The question whether a lawyer—whose sanction is non-monetary and consists solely of limitations on his participation in a trial which has now concluded—has standing, *independent from his client,* to seek review of a sanction order has not been addressed before by this Court.

¶ 7 Funk and Schmidt assert that because (1) they possess legally protected property interests in their professional reputations and (2) the trial judge's bench rulings impaired those interests, they have standing.[9] They also contend that the harm which they have suffered is pecuniary in nature because their representation of Gulf Oil was limited by the sanction orders. Lastly, they allege that the injury to their reputations will hurt their ability to attract business in the future. It is not contended by either lawyer that their licenses were at any time in jeopardy of divestiture or revocation. The appellants have submitted no authority which holds that they have a protected property right to represent a particular client.[10]

¶ 8 We are mindful that it is incumbent upon a trial judge to manage the proceedings in his or her court in order to assure orderly process to all parties.[11] In this regard district courts are indeed entitled to discretion in monitoring their own processes. Sanctions exist to ensure the proper functioning of the legal system and there can be no doubt that they primarily deter and punish. Unquestionably, the trial court's interests are not synonymous with the trial lawyers' interests in every instance and there is potential for conflict and injury—be it justified or unjustified—to the legal practitioner's reputation. Nonetheless, it is not necessary today to, and hence we do not, reach the issue whether Funk and Schmidt's interests in their professional reputations are legally protectible because *there is no reasonable likelihood that the alleged harm would be redressed by a favorable opinion.* Hence, the third component of standing is missing.

¶ 9 Assuming for the purpose of analysis that Funk and Schmidt do have a legally protected interest in their professional reputation which was harmed in some way by the imposed *non-monetary* sanctions, their injuries are not remediable under the circumstances of this case. The imposed sanctions consist primarily of limitations on the two lawyers' right to participate in certain oral presentations before the jury.[12] Both counsel remained at counsel's table—assisting their client—throughout the trial. *The trial is now concluded.*

¶ 10 Assaying standing against the facts disclosed by the record, the lawyers' appeal is in a form which is not capable of judicial resolution. Standing's third component requires there be a reasonable likelihood that the complained of injury will be redressed by a favorable decision.[13] The Court can provide no remedy—other than a meaningless declaration—to the lawyers in this appeal. If the sanction orders constitute reversible error, the only possible remedy would be to order a new trial. This relief, if appropriate under the facts disclosed by the record, would be a remedy available to Gulf Oil Company in its own right and not to the appellants who are *non-parties* in the litigation below. *As a personal right* Gulf's lawyers are not entitled to a *new trial* solely to vindicate perceived damage to their professional reputations.

---

**8.** *Vickers v. Boyd,* 1992 OK 42, 836 P.2d 1269, *Hammonds v. Osteopathic Hospital Founders Association,* 1996 OK 54, 917 P.2d 6.

**9.** *Johnson v. Board of Governors of Registered Dentists,* 1996 OK 41, 913 P.2d 1339. In *Johnson,* we held that a professional license is a legally protected property interest and the license holder is entitled to due process before its revocation.

**10.** Extant jurisprudence teaches that it is the *client's* right to employ counsel of its choosing. *State ex rel. Howard v. Oklahoma Corporation Commission,* 614 P.2d 45, 49–50 (Okla.1980); *see also Goldston v. American Motors Corporation,* 326 N.C. 723, 392 S.E.2d 735 (1990),.

**11.** *See Gulf, C. & S.F. Ry. Co. v. Smith,* 270 P.2d 629 syl. 1 & 2 (Okla.1954). *See also Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193, 1209 (11th Cir.1985).

**12.** For the nature of the imposed sanctions, see *supra* note 1.

**13.** *See Toxic Waste, supra* note 4.

¶ 11 Appellants argue that publication of the trial judge's comments and the fact of the sanctions in a local newspaper has affected negatively their ability to attract business. Even if they received a favorable decision, it is beyond the Court's power to order its opinion published by local media. It is a speculative contingency that our holding would be deemed newsworthy by the local press, published and read by those who earlier read the so-called negative press coverage. The Court does not see the requisite likelihood that a favorable decision would remedy the alleged harm to the lawyers' ability to attract new business. Hence, the appellants lack standing.

¶ 12 If the appellants feel that the trial judge's conduct was *oppressive*, their complaints properly lie with the Court on the Judiciary and not here. The latter tribunal has exclusive jurisdiction to hear causes of that character.[14]

## III

### SUMMARY

¶ 13 Without reaching the issue whether the appellants' interests in their professional reputations are susceptible to protection from the harm, if any, occasioned by Judge Shallcross' *non-monetary* sanctions, the appeal is dismissed because the lawyers lack standing to pursue the matter. The Court cannot give them the effectual relief which they seek, *i.e.*, public remediation of a perceived harm to their professional reputations. Hence, the third component of the *Toxic Waste* standing test cannot be satisfied.

---

14. Okla. Const. art. 7–A, § 2(a). Its pertinent provisions are:
    There is created a Court on the Judiciary.... The Court is vested, subject to the provisions of this Article, with *sole* and *exclusive* jurisdiction to hear and determine causes arising thereunder. [Emphasis added.]

1. When called to the bar of a court, lawyers in England are said to have a right to appear and be heard on behalf of clients. Their professional competence as forensic practitioners confers upon them what is known as *right of audience.* See BLACK'S LAW DICTIONARY 151 (6th ed.1990) (definition of "barrister"); *see also* Mary C. Daly, *The Cultural, Ethical, and Legal Challenges in*

¶ 14 **THE APPEAL IS DISMISSED WITH PREJUDICE.**

¶ 15 SUMMERS, C.J., HARGRAVE, V.C.J., SIMMS, KAUGER and WATT, JJ., concur.

¶ 16 WILSON, J., concurs in part; dissents in part.

¶ 17 OPALA, J., dissents.

¶ 18 HODGES, J., not voting.

OPALA, J., dissenting.

¶ 1 The court holds today that lawyers have *no standing* to seek review of non-monetary sanctions. By making unreviewable that courtroom discipline which visits no pecuniary loss, the court gives the trial bench a *carte blanche* for boundless mid-trial restrictions on a lawyer's *right of audience.*[1] I cannot accede to a doctrine which puts a premium on loss of money but utterly discounts the grave harm that is inflicted by means of non-pecuniary fetters on a legal practitioner's courtroom liberty to advocate a client's cause.

### I

### BACKGROUND

¶ 2 Funk and Schmidt, attorneys for the defendant in an action, were subjected to mid-trial conduct restrictions *after* the trial judge had perceived their behavior as violative of certain *in limine* orders. Funk was precluded from questioning witnesses and participating in closing arguments; Schmidt was initially silenced during his closing argument and then barred from involvement in

---

*Lawyering for a Global Organization: The Role of the General Counsel,* 46 EMORY L.J. 1057, 1102 (1997); Karen L.K. Miller, *Zip to Nil?: A Comparison of American and English Lawyers' Standards of Professional Conduct,* CA32 ALI–ABA 199 (1995). An American lawyer's *interest in a granted right of audience is every bit as great as* that of a legal practitioner in the United Kingdom. Moreover, the former's license to practice, unlike that of the latter, also is protected by constitutional shields against impermissible government action. *See Johnson v. Board of Governors of Registered Dentists,* 1996 OK 4 & 19, 913 P.2d 1339, 1345; *see also id.* at 1350 (Opala, J., concurring).

post-trial proceedings. Denied to the two lawyers was not only their right of audience, but also the opportunity to charge the applicable rate for billable time as *active courtroom advocates*.[2] In short, it is my view that a *single episode* of a significantly curtailed freedom to advocate is enough to confer standing on the adversely affected legal practitioner.

## II

### THE PECUNIARY–LOSS TEST IS A FLAWED STANDARD FOR APPELLATE STANDING

¶ 3 A license to practice law, which *creates* a constitutionally protected property interest[3], *confers* upon its bearer a *right of audience* before courts sitting within the territory of the admitting jurisdiction. A lawyer's liberty to advocate his client's cause before a court represents the core value of the legal license holder's proprietary interest. Where there is a *significant* infringement upon an advocate's courtroom freedom,[4] the aggrieved legal practitioner should be accorded standing to appeal even in the absence of attendant pecuniary sanctions.[5] Any significant disciplinary in-court restraint

clearly (a) *impinges* on the lawyer's duty to deliver *untrammeled* and *independent* service of forensic representation and (b) *harms* the practitioner's standing both with the sanctioning court as well as with the client.

¶ 4 Reprimands and gag orders can be far more devastating than monetary sanctions. Loss of livelihood and of professional reputation is to be regarded equally as harmful as pecuniary deficit.[6] Given the importance of a lawyer's professional reputation and standing, the right to appeal from a decision that visits discipline should not depend on the form of inflicted sanction.[7]

¶ 5 The standard for standing to appeal should be the same as that applied in cases of contempt arising from litigation-related misconduct. If one can by right secure review of a contempt conviction that results in a sentence which neither imposes a fine nor suspends its remittance, one should with equal ease be able to appeal from imposition of non-pecuniary sanctions.[8]

¶ 6 Today's pecuniary-loss test also is in discord with the appellate standing standards that govern in *nisi prius* disqualification of a litigant's counsel of record. One who is aggrieved by a judicially forced exit of a party's chosen counsel—be it the lawyer or her client—may appeal *without* showing any pe-

---

**2.** The question posed for us by the court's pronouncement is *not* whether the sanctioned lawyers were *wrongly* deprived of their right to be heard. What is decided today is whether they are entitled to *review* of the judge-imposed discipline, i.e., *to learn from a reviewing tribunal whether the trial judge was legally justified in putting them on ice.* Today's decision signals *that they have no right to an answer.*

Even when armed with standing to appeal non-pecuniary courtroom discipline, lawyers face the risk that the appellate court will find the sanction justified. *See, e.g., Williams v. United States*, 158 F.3d 50, 51 (1st Cir.1998) (Lynch, J., dissenting) (discussing how an appellate court's affirmance of a sanctions order will give greater force to the administered discipline than it would have had *if its terms remained unendorsed on review*).

**3.** *See Johnson v. Board of Governors of Registered Dentists*, 1996 OK 4 ¶ 19, 913 P.2d 1339, 1345; *see also id.* at 1350 (Opala, J., concurring).

**4.** *Counsel's freedom* to advocate on the courtroom floor *is not absolute.* A lawyer must press his clients' interest within the "allowable bounds

of aggressive advocacy". *See, e.g., Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954). "A courtroom is a hallowed place where trials must proceed with dignity and not become occasions for entertainment by the participants, by extraneous persons, by modern mass media, or otherwise." *Illinois v. Allen*, 397 U.S. 337, 351, 90 S.Ct. 1057, 1065, 25 L.Ed.2d 353 (1970) (Douglas, J.); *see also, Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

**5.** *A mere de minimis forensic restraint should not be enough to confer standing.. The constraints placed on the lawyers in this case cannot be dismissed as insignificant and hence de minimis.*

**6.** *See Johnson v. Board of Governors of Registered Dentists*, 1996 OK 41, ¶ 19, ¶ 22, 913 P.2d 1339, 1345–46.

**7.** *See Walker v. City of Mesquite Texas*, 129 F.3d 831, 832 (5th Cir.1997).

**8.** *See, e.g., Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954).

cuniary loss occasioned by the court's ban from representation.[9] Just as in cases where the *right of audience is totally withheld,* so too when only *some* restraint upon its exercise is imposed, the aggrieved party should be accorded standing to seek corrective relief.[10]

### III

### THE PREDICTABLE AFTERMATH OF TODAY'S RULING

¶ 7 Today's ruling will have a far-reaching effect and a disastrous fallout. It leaves no shred of constraint on the exercise of *nisi prius* discretion to impose non-monetary discipline. The trial judge's self-generated prudence is now the law's sole gauge of the sanction's correctness. Destroying a lawyer's access to appellate review of non-pecuniary sanctions grants first-instance judges (as well as *administrative* adjudicators) a veritable license for visiting on forensic advocates unwarranted reprimands, gag orders, and like forms of non-monetary penalty. In short, *nisi prius* judges (as well as their counterparts in agency decision-making) may now *with absolute impunity* restrain *any* legal practitioner's in-trial conduct.

### IV

### SUMMARY

¶ 8 I cannot join today's opinion. Its terms are unacceptable to me because they (a) *subject* the trial bar to an unregulated courthouse judges' discretion over visiting non-monetary sanctions and (b) *abdicate* this court's constitutional responsibility to concretize the norms of courtroom etiquette by precedent-setting jurisprudence that will provide guidance for the bench and bar.[11] I would declare that the two aggrieved lawyers *must be accorded standing* to prosecute the present appeal.

9.  *See, e.g., Piette v. Bradley & Leseberg,* 1996 OK 124, 930 P.2d 183.

10. The gag orders in contest here doubtless resulted in a *curtailed right of audience* for the adversely affected parties' counsel. *Review has been allowed* where no pecuniary sanctions were levied but the courthouse doors stood barred to fathers' (or husbands') defense efforts because they were delinquent in support payments. *See, e.g., Carter v. Carter,* 1989 OK 153, 783 P.2d 969; *Bishop v. Bishop,* 1958 OK 16, 321 P.2d 416. *Today's pronouncement imposing the pecuniary-loss standard for appellate standing is plainly*

inconsistent with the teachings of both *Carter* and *Bishop*.

11.    *See Winters By and Through Winters v. City of Oklahoma City,* 1987 OK 63, 740 P.2d 724, 728 (Opala, J., dissenting in part); *Tweedy v. Oklahoma Bar Ass'n.,* 1981 OK 12, 624 P.2d 1049, 1052. For an incisive explanation of the critical need for jurisprudential guidance that will assist trial judges in dealing with courtroom misconduct and disruptions, see *Illinois v. Allen,* 397 U.S. 337, 351, 90 S.Ct. 1057, 1065, 25 L.Ed.2d 353 (1970) (Douglas, J.) and *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).