OSCN Found Document:TOBACCO SETTLEMENT ENDOWMENT TRUST FUND v. STITT, ET AL.

 

 
 TOBACCO SETTLEMENT ENDOWMENT TRUST FUND v. STITT, ET AL.2026 OK 1Case Number: 123238Decided: 01/13/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 1, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

TOBACCO SETTLEMENT ENDOWMENT TRUST FUND, Petitioner,
v.
KEVIN STITT, Governor of Oklahoma; LONNIE PAXTON, President Pro Tempore of the Oklahoma Senate; KYLE HILBERT, Speaker of the Oklahoma House of Representatives; GENTNER DRUMMOND, Attorney General; TODD RUSS, State Treasurer; CINDY BYRD, State Auditor and Inspector; and State Superintendent of Public Instruction, Respondents.

OPINION

¶0 Petitioner brought this action seeking declaratory relief. We assume jurisdiction, find that HB 2783 is unconstitutional, and grant declaratory relief.

ORIGINAL JURISDICTION ASSUMED
DECLARATORY RELIEF GRANTED

Bob Burke, Oklahoma City, Oklahoma for Petitioner Tobacco Settlement Endowment Trust Fund.

Benjamin M. Lepak, Remington D. Dean, Audrey A. Weaver, William T. Milam, III, Oklahoma Office of the Governor, Oklahoma City, Oklahoma for Respondent J. Kevin Stitt.

Garry M. Gaskins, II, Solicitor General, Sam Black, Assistant Solicitor General, Zach West, Cullen D. Sweeney, Office of the Attorney General, Oklahoma City, Oklahoma for Respondents Gentner Drummond, Lonnie Paxton, and Kyle Hilbert.

Heidi J. Long, Leonard Long & Cassil, Oklahoma City, Oklahoma for Respondent Cindy Byrd.

Jacquelyne K. Phelps, Oklahoma State Department of Education, Oklahoma City, Oklahoma, for Respondent State Superintendent of Public Instruction.

Wyatt A. McGuire, McGuire Law Firm, Edmond, Oklahoma, for Amicus Curiae Campaign for Tobacco-Free Kids.

KUEHN, V.C.J.:

¶1 Petitioner, the Tobacco Settlement Endowment Trust Fund (TSET), claims that HB 2783 conflicts with the constitutional requirements for appointment of TSET's Board of Directors. This case does not concern the general limits of legislative authority, nor does it speak to whether existing statutory provisions for removal of officers do or do not apply to TSET directors. The only issue before us is the narrow constitutional question: does the amended statute, as written, violate the Oklahoma Constitution? We find that it does and grant declaratory relief. 

Background

¶2 Following extensive litigation, in 1998 Oklahoma entered into a Master Settlement Agreement with the tobacco industry. This dispute concerns the Board of Directors of the entity created to oversee allocations of the settlement funds.

¶3 The Agreement provided for an estimated $2.4 billion settlement, with the first installment, in FY2001, expected to be $60.1 million. In anticipation of these payments, in 2000 Oklahoma citizens approved State Question 692, amending the Oklahoma Constitution to create TSET. TSET was designed to hold the earnings from the projected annual payments in trust, to be used for research and treatment to prevent and combat tobacco-related diseases, including cancer, as well as tobacco prevention and cessation programs. TSET also targeted other programs to maintain or improve Oklahomans' health and health care services, emphasizing programs for children; common and higher education programs, including substance abuse prevention and treatment, designed to improve Oklahoma children's health and quality of life; programs to enhance the health and well-being of senior citizens; and authorized administrative expenses. Okla. Const. art. X, § 40(E). In FY2024, the TSET budget allocated $77,745,164 to programs in these categories. As of June 20, 2024, the trust fund balance was valued at $1.858 billion. [TSET FY2024 Annual Report at 4.]

¶4 Originally, when determining how the settlement funds should be used, legislative leaders, Attorney General Edmondson, and Governor Keating agreed that the state would be best served by directing the money specifically toward tobacco-cessation and health programs and by preserving the funds in a separate, protected structure. Their explicit intent was to safeguard the money from legislative diversion. The chosen solution was to create TSET through a constitutional amendment, thereby removing legislative power to allocate or appropriate TSET funds. 

¶5 In addition to creating the trust, the TSET founding authorities ensured that the seven-member TSET board of directors (Board) would be geographically diverse and bipartisan. Each member is appointed by a different elected official from either the executive or legislative branch. The directors serve staggered terms. At least one director must be appointed from each congressional district, but there may be no more than two from any single district; no more than four directors may be members of the same political party and each director must have been a member of their party for a year prior to the date of appointment. Okla. Const. art. X, § 40(D). Taken together, these provisions ensure that neither a single executive or legislative leader, nor any single political party, can control the Board membership. This reduces outsiders' ability to put pressure on directors to invest or allocate funds to specific entities, or to allocate money for a purpose other than that specified in the constitutional provisions.

¶6 In the recent 2025 legislative session, the Legislature passed HB 2783, amending the statutory provisions governing the Board appointments and terms. Petitioner claims this amendment is unconstitutional because it removes the Article X Section 40(D) requirement that directors serve staggered fixed seven-year terms. Petitioner is correct.

The Law

¶7 The constitutional provision creating TSET provides:

There is hereby created the Board of Directors of the Tobacco Settlement Endowment Trust Fund. The Board of Directors shall consist of seven (7) members, one appointed by each of the following appointing authorities:

1. The Governor;

2. The President Pro Tempore of the Senate;

3. The Speaker of the House of Representatives;

4. The Attorney General;

5. The State Treasurer;

6. The State Auditor and Inspector; and

7. The State Superintendent of Public Instruction.

The initial appointed members shall serve staggered terms of office as provided for by law. Thereafter, the appointed members of the Board of Directors shall serve seven-year terms of office. At least one appointee shall be appointed from each congressional district, and not more than two appointees shall be appointed from any single congressional district. Not more than four appointees shall be members of the same political party. An appointee shall have been a member of the political party to which the appointee belongs for at least one (1) year prior to the date of appointment. Appointees shall have demonstrated expertise in public or private health care or programs related to or for the benefit of children or senior adults.

The Board of Directors shall meet at least one time each calendar quarter.

Okla. Const. art. X, § 40(D).

¶8 In 2001, the Legislature passed legislation to implement these constitutional provisions. 62 O.S. § 2308

Appointments to the Board of Directors of the Tobacco Settlement Endowment Trust Fund shall be staggered as provided in this section, pursuant to the provisions of Section 40 of Article X of the Oklahoma Constitution. The initial staggered terms of office of persons appointed prior to April 10, 2001, or persons appointed to fill the remainder of an initial term of office shall be as follows:

1. The term of office of the person appointed by the Speaker of the House of Representatives shall expire June 30, 2001;

2. The term of office of the person appointed by the President Pro Tempore of the Senate shall expire June 30, 2002;

3. The term of office of the person appointed by the Governor shall expire June 30, 2003;

4. The term of office of the person appointed by the Attorney General shall expire June 30, 2004;

5. The term of office of the person appointed by the State Treasurer shall expire June 30, 2005;

6. The term of office of the person appointed by the State Auditor and Inspector shall expire June 30, 2006; and

7. The term of office of the person appointed by the State Superintendent of Public Instruction shall expire June 30, 2007.

Thereafter, persons shall be appointed for terms of seven (7) years beginning July 1. Any vacancy shall be filled by the appointing authority for the remainder of the unexpired term.

62 O.S. § 2304

¶9 In 2025, the Legislature amended Section 2308(C). This amendment, the focus of this case, makes no reference to the existing provisions in Section 2804(B), but now reads:

The Board of Directors shall serve at the pleasure of their appointing authority, not to exceed a seven-year term of office.

62 O.S.Supp.2025 § 2308

Original Jurisdiction

¶10 The Supreme Court has "general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law." Okla. Const. art. VII, § 4. This Court was intended "primarily as an appellate court." Jarman v. Mason, 1924 OK 722Indep. Sch. Dist. No. 12 of Okla. Cnty. v. State ex rel. State Bd. of Educ., 2024 OK 39565 P.3d 23 Fent v. Contingency Review Bd., 2007 OK 27163 P.3d 512 Edmondson v. Pearce, 2004 OK 2391 P.3d 605

¶11 Petitioner asks us to assess the constitutionality of a new statute, HB 2783, compared to an existing constitutional provision, a matter of first impression. Id. When considering whether to exercise jurisdiction in a matter of public importance, the publici juris doctrine requires the matter affect the public interest, with an urgent or pressing need for an early decision. Keating v. Johnson, 1996 OK 61918 P.2d 51Hunsucker v. Fallin, 2017 OK 100408 P.3d 599publici juris." Fent, 2007 OK 27See, e.g., Stitt v. Treat, 2024 OK 21546 P.3d 882Hunsucker, 2017 OK 100Edmondson, 2004 OK 23

¶12 This case meets that stringent test. TSET's core function is to disburse public funds statewide for the health and welfare of Oklahomans, and the method by which the TSET Board is appointed and operates directly affects the public across the state. HB 2783 significantly changes the way in which the TSET Board is appointed, leaving open the possibility that any current director could be removed and replaced immediately when the law goes into effect; this immediately affects the terms of current individual directors and potentially affects the Board's functioning as a whole. Furthermore, Petitioner raises a pure question of law: does HB 2783 violate the constitutional provisions governing the TSET Board? There is no need for fact-finding and no need to develop a further record. Ultimately, this Court must decide the question presented, and our determination would not be aided by an initial district court ruling. The existing appellate record and briefing provide all that is required for our review. What differentiates this case from those in which original jurisdiction is inappropriate is that the issue here is purely constitutional, presents no disputed facts, and concerns a matter of immediate statewide public importance that only this Court can definitively resolve. The lack of any factual issue, the potential for immediate and significant disruption to TSET's ability to function as provided by the Constitution, and TSET's statewide effect, argue for this Court to issue a speedy decision on this constitutional question. Keating, 1996 OK 61

Justiciability

¶13 Respondents argue that Petitioner has no standing to challenge HB 2783. For standing, we ask not whether the issue is justiciable, but whether Petitioner is a proper party to the suit. In the Matter of M.R., 2024 OK 28548 P.3d 120Toxic Waste Impact Grp., Inc., v. Leavitt, 1994 OK 148890 P.2d 906Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 16976 P.2d 545Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The party must "have a personal stake in the outcome." State ex rel. Bd. of Regents v. McCloskey Bros, Inc., 2009 OK 90227 P.3d 133Lujan, 504 U.S. at 562.

¶14 Plaintiff TSET is made up of the seven-member Board. That Board and its individual members are directly, immediately, and substantially affected by the change HB 2783 makes to the appointment process. Rather than a guaranteed seven-year term, each of those directors now faces the possibility that their position could end at any time. And the Board as a whole is affected because, since its members' terms are no longer fixed, its membership may fluctuate at the whim of each of seven appointing authorities, potentially resulting in, as the Department of Education Response describes it, "chaos". [Dept. of Ed. Response at 3] This gives the TSET Board itself a personal stake in the outcome.

¶15 Petitioner specifically requests declaratory relief. A declaratory judgment is "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." Black's Law Dictionary (12th Ed. 2024). Respondents mistakenly argue that there is no controversy because no director has as yet been removed from the Board under the provisions of HB 2783--that is, that the suit is not ripe because no actual constitutional violation has yet happened. This is precisely when declaratory judgment is appropriate: TSET need not be adversely affected by the law in order to challenge its validity. Ethics Comm'n v. Cullison, 1993 OK 37850 P.2d 106912 O.S. § 1651

¶16 That legislation neither prohibits nor constrains this Court from issuing declaratory relief as an exercise of our original jurisdiction under Article 7, Section 4, and we have rejected any argument otherwise. Ethics Comm'n, 1993 OK 37Id. Where, as here, circumstances justify it, this Court may issue writs, such as declaratory judgment, as an aspect of its supervisory jurisdiction. Indep. Sch. Dist. No. 12 of Okla. Cnty., 2024 OK 39see, e.g., Naifeh v. State ex rel. Okla. Tax Comm'n, 2017 OK 63400 P.3d 759Sierra Club v. State ex rel. Okla. Tax Comm'n, 2017 OK 83405 P.3d 691Hunsucker v. Fallin, 2017 OK 100408 P.3d 599Ethics Comm'n, 1993 OK 37on its face as applied to him need not risk its violation in order to invoke declaratory judgment relief under the Act." Tulsa Indus. Auth. v. State, 1983 OK 99672 P.2d 299Western Heights Indep. Sch. Dist. v. State, 2022 OK 79518 P.3d 531

Analysis

HB 2783 Conflicts with the Fixed Term Required by Section 40(D)

¶17 The Constitution provides that after the initial staggered TSET Board appointments, "the appointed members of the Board of Directors shall serve seven-year terms of office." Okla. Const. art. X, § 40(D) (emphasis added). This language is unambiguous: directors each serve a staggered fixed term of seven years. Bailey v. State ex rel. Serv. Okla., 2025 OK 34572 P.3d 1026

¶18 The language of HB 2783 is equally clear: "The Board of Directors shall serve at the pleasure of their appointing authority, not to exceed a seven-year term of office." 62 O.S.Supp.2025, § 2308State rex rel. Matlack v. Okla. City, 1913 OK 393134 P. 58Id. at ¶ 9, 134 P. at 61. The same is true here. Under HB 2783, while a director's term may be for no longer than seven years, in fact it may end at any time determined by the appointing authority.

¶19 Respondents suggest that the fixed-term requirement is not affected because any replacement director would serve out the remainder of a removed appointee's seven-year term. the very opposite of a fixed term--thereby destroying the staggered, fixed-term structure the Constitution requires. Yet, under HB 2783, that appointing authority would still appear to be "following the law." This only underscores the constitutional defect. Remarkably, the very examples cited by Respondents illustrate how director vacancies are properly filled and demonstrate that the process has operated without issue since 2001, including up to the filing of this lawsuit. Notably, none of the examples involves an at-will termination, because such a termination is neither contemplated by the constitutional provision nor permissible under the language adopted by the people.

¶20 Respondents also suggest that TSET directors do not currently serve fixed terms. Respondents refer to Title 51, Section 24.1(A), which provides that any elected or appointed officer or employee convicted of a felony shall be automatically suspended. This statute, enacted in 1965, was in effect at the time TSET was created. Respondents argue this provision means that because under Section 24.1(A) TSET directors can be removed for a felony conviction, they do not have fixed seven-year terms. We must consider related provisions of law to give full force and effect to each. Rowan v. State Farm Fire & Cas. Co., 2025 OK 5566 P.3d 577See, e.g., Garland v. Cargill, 602 U.S. 406, 427 (2024) (presumption against ineffectiveness weighs against interpretations rendering a law useless for its purpose). As Respondents argue vigorously elsewhere, other existing provisions for state boards and commissions allow for both a fixed term and removal for cause. There is no reason to interpret the requirements of Section 40(D) and Section 24.1(A) any differently. 

¶21 Respondents also argue that the absence of a removal clause in the TSET constitutional provisions gives the Legislature authority to create one. They point to constitutional provisions establishing the Pardon and Parole Board, the Wildlife Conservation Commission, the Alcoholic Beverage Laws and Enforcement Commission, and two Boards of Regents--all of which include removal-for-cause language. From this, Respondents contend that the Legislature may likewise supply a removal mechanism for TSET. That argument proves the opposite. It demonstrates that the Legislature knows exactly how to include removal-for-cause language and has done so when the Constitution authorizes it. It did not do so here. The fact that the Legislature, when creating TSET, chose not to include such language does not support Respondents' claim that it may now provide for the removal of TSET Board members "in whatever manner the Legislature sees fit." [Respondent Drummond's Response at 8.] Taken with the explicit statements regarding TSET's purpose made when it was enacted, an equally valid interpretation is that the Legislature, to further that purpose, chose not to include a removal provision which would grant the appointing authorities continuing power over TSET's directors.

¶22 Whether anything "needs fixing" is ultimately a question of constitutional design, not legislative preference. TSET has operated as intended for more than two decades under the structure the people adopted. The absence of a removal clause has never impeded its function. In that context, creating an at-will removal power is not a necessary correction but a fundamental change to the governance model the Constitution established. And if such a change is truly warranted, it is the people--not the Legislature--who must make it. Where there is an intolerable conflict between a constitutional provision and a legislative provision, the Constitution controls. Ethics Comm'n v. Cullison, 1993 OK 37850 P.2d 1069

The Limits of Legislative Authority

¶23 While the constitutional provision creating TSET is very specific, its creators recognized that (a) implementing legislation would be necessary, and (b) over time, the legislation might need amendment. Consequently, Article X, Section 40(G) provides, "The Legislature may enact laws to further implement the provisions of this section." Okla. Const., art. X, § 40(G). What does it mean to "further implement" the constitutional provisions? One example is the initial implementing legislation for TSET itself. In 2001 the Legislature passed the Tobacco Settlement Endowment Trust Fund Act, Title 62, Sections 2301-2310. The Act reflected the language contained in the constitutional provisions setting up the trust fund, board of investors, and board of directors. That is, the implementing legislation mirrored the constitutional requirements.

¶24 This Court examined the interplay between constitutional language and legislative amending authority in Ethics Commission v. Cullison. Like TSET, the Ethics Commission was created by state question as a constitutional amendment, with specific provisions including its structure as well as rulemaking and enforcement authority. Okla. Const. art. 29, §§ 1-7. After the newly created Ethics Commission promulgated rules in 2001, the Legislature not only disapproved the rules (an act authorized by the Constitution) but enacted comprehensive statutes governing the subjects that had been covered in the disapproved rules. Ethics Comm'n, 1993 OK 37Id., ¶ 14, 850 P.2d at 1075. The Constitution provided that the Commission shall prosecute violations of the Ethics Rules "when it deems appropriate" (Okla. Const. art. 29 § 4), but the legislation created a specific legal determination which must be made before prosecution commenced; the constitutional language controlled. Ethics Comm'n, ¶ 15, 850 P.2d at 1075. And more to our point, the Constitution gives the Ethics Commission power to promulgate rules, including civil penalties, while authorizing the Legislature to repeal or modify rules so adopted. This Court held that this ability to repeal or modify rules did not allow the Legislature to replace the substance of Ethics Commission rules by a comprehensive statutory plan. The Legislature could not bypass the Ethics Commission rule-making authority found in the Constitution. Id., ¶ 18, 850 P.2d at 1076. This supports the conclusion that, at a minimum, legislation designed to further implement a constitutional provision must neither substantively change nor contradict that provision.

¶25 Respondents claim that Section 40(G) provides broad authority for the Legislature to alter the appointment requirements of Section 40(D) as it sees fit. However, if the Legislature needs to amend a statute to further implement a constitutional provision, there must be some reason that is necessary. Respondents do not persuasively argue what, exactly, about HB 2783 further implements any constitutional TSET duty or requirement. Respondents do not claim that TSET members serving staggered fixed seven-year terms have been unable to carry out the TSET mandates, nor that TSET's primary functions have been impeded. There is not even a suggestion that the proposed amendment was necessary to carry out TSET's mission. One might envision circumstances, such as profound physical or mental disability, which would so impede a director that they could not perform their duties; an amendment addressing removal for cause in such circumstances might be justified. But HB 2783 allows for removal at will, not removal for cause. Respondent Department of Education appears to openly argue that "implement" simply means "change", while admitting that changing TSET's Board to at-will terms would result in some degree of chaos. [Dept. of Ed. Response at 3.] But all the Respondents' pleadings are silent on any justification, grounded in Section 40(G), for changing the constitutional provision from "fixed term" to "at will".

HB 2783 Is Not a Removal Statute

¶26 Rather than addressing the conflict between the plain language of Section 40(D) and HB 2783, Respondents reframe the issue. They characterize HB 2783 as a removal statute, though its provisions and the law do not support that description.

¶27 The actual effect of HB 2783 is to remove the fixed-term structure mandated by Section 40(D) and replace it with service at the will of the appointing authorities. This creates an unavoidable conflict. In response, Respondents contend that no conflict exists because the Legislature may alter the constitutional terms. As discussed above, neither the constitutional provisions nor governing law supports that assertion.

¶28 Respondents claim that the Legislature has general authority to amend constitutional provisions by statute if the Constitution doesn't say it can't. Respondents rely on the legal principle that the Legislature is "supreme, except as limited by the express provisions of our State Constitution." Dobbs v. Bd. of Cty. Comm'rs of Okla. Cnty., 1953 OK 159257 P.2d 802

¶29 But our cases do not support this reading. In Dobbs, the Court found the Legislature could increase the number of county judges, not because the Constitution didn't prohibit that, but because specific constitutional provisions affirmatively allowed for it. Id., ¶ 28, 257 P.2d at 807. The same is true of Stitt v. Treat, 2024 OK 21546 P.3d 882Dobbs, this Court stated the legal principle that this Court should strictly avoid interpretations which find implied limitations on Legislative authority. Id., ¶ 16, 546 P.3d at 889-90. However, the Court held that the circumstances of the case were within the limitations provided in the statute. Id., ¶ 18, 546 P.3d at 890. Respondents also rely on State ex rel. Edmondson v. Oklahoma Corporation Commission, 1998 OK 118971 P.2d 868Id. ¶ 16, 971 P.2d at 872. But in Edmondson, the statute at issue directly conflicted with a constitutional provision, and this Court--consistent with that principle--held the statute unconstitutional. Id., ¶ 18, 971 P.2d at 872; see also Glasco v. State ex rel. Okla. Dep't of Corr., 2008 OK 65188 P.3d 177

¶30 Respondents further cite cases involving entities created by statute, not by the Constitution. In particular they discuss Bynum v. Strain, 1923 OK 596218 P. 883Bynum supports Petitioner's argument. The Constitution authorized the Legislature to create the Banking Department and the Banking Commissioner, an office appointed by the governor and subject to removal by him for cause. Id., ¶ 21, 218 P. at 887. Given that explicit constitutional authority, the Court declined to hold the Governor could not remove the complaining Commissioner. Id., ¶ 26, 218 P. at 888. Bynum concerned an executive office, created by legislation, within the executive branch and appointed by the Executive. The TSET Board is none of these things. It is a constitutionally created board, separate from the executive and legislative branches, with no single appointing authority from either branch of government; no branch of government has direct authority over TSET; unlike the legislation in Bynum, the constitutional provision creating TSET has no language authorizing any appointing authority to remove a director for cause.

¶31 Bynum is instructive on the distinction between appointment and removal, and the importance of the nature of an officer's term. The Court first noted that, where a term is at will, or not fixed by statute or otherwise provided by law, "the power to remove is an incident to the power to appoint." Id., ¶ 31, 218 P. at 889. However, "the power of removal is not incident to the power of appointment where the extent of the term of office is fixed by statute." Id., ¶ 32, 218 P. at 889. This substantive principle underlies the entire Bynum discussion and applies directly here. TSET's directors serve fixed seven-year terms, and the constitutional provisions establishing TSET include no removal authority. Accordingly, an appointing authority's power to appoint does not carry with it the power to remove.

¶32 In State ex rel. King v. Rowe, 1931 OK 328Id., ¶ 26, 300 P. at 730. But when considering the actual issue, the Court found that the governor's power of removal as to the judiciary was limited by constitutional provisions relating to the judiciary, and by the separation of powers. Id., ¶¶ 28-30, 300 P. at 731. After a lengthy discussion, the Court stated that, even in the absence of an express prohibition against removal, if a governor were able to remove appointed judges,

[H]e would be at liberty to remove them in the event he did not like the decision, and appoint a new court to consider rehearing, and thus completely control the action, conduct, and administration of judicial decisions. Such is not the law. Happily it is not the law, for such a situation would be tyrannous and utterly destructive of an independent judiciary.

Id., ¶ 56, 300 P. at 735. Neither Bynum nor Rowe support Respondents' claims.

¶33 None of the general statements of law above provide the authority the Legislature needs to override a specific constitutional mandate. Respondents argue that the at-will removal provision of HB 2783 is justified by Article VIII, Section 2, which provides that "[a]ll elective officers, not liable to impeachment, shall be subject to removal from office in such manner and for such causes as may be provided by law." Okla. Const. art. VIII, § 2. But the TSET directors are not elected officers. While the parties spend some time discussing whether TSET directors are executive officers, that distinction doesn't really matter here. They are certainly not elected, and the provisions of Article VIII, Section 2 simply do not apply. Insofar as Respondents' arguments rely on that authority they must fail.

¶34 Essentially, Respondents argue that, if the Constitution is silent on an issue, the Legislature may amend a constitutional provision by statute. They claim that because the TSET provisions in Section 40(D) say nothing about removal, the Legislature may step in to "clarify" the constitutional provisions. But that is not what HB 2783 does. It explicitly changes the fixed-term appointments to at-will appointments. As with regular statutes, when considering constitutional provisions we must ascertain and give effect to the framers' intent and the public policy underlying it. Rowan v. State Farm Fire & Cas. Co., 2025 OK 5566 P.3d 577American Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95341 P.3d 56

Conclusion

¶35 The language in Article X, Section 40(D) is clear and unambiguous. It requires that TSET directors be appointed to serve a staggered fixed seven-year term. Consistent with the intent of the TSET authors, to protect the funds from legislative or executive diversion, Section 40(D) does not include a way for appointing authorities to remove a director. By contrast, HB 2783 converts the TSET appointment process from a fixed seven-year term to an at-will term, where directors serve at the pleasure of the appointing authority. There is no law authorizing this substantive statutory change to the constitutional language. Respondents have offered neither explanation nor justification for it, beyond claiming it is within the Legislature's power to amend Section 40(D) as it wishes. This Court finds HB 2783 unconstitutional and grants declaratory relief.

ORIGINAL JURISDICTION ASSUMED
DECLARATORY RELIEF GRANTED

CONCUR: Rowe, C.J., Kuehn, V.C.J., and Winchester, Edmondson, Combs, Gurich, Darby and Kane, JJ.

DISSENT: Jett, J. ( by separate opinion)

FOOTNOTES

Id.

 

 

JETT, J., dissenting:

¶1 I respectfully dissent from the majority's decision to assume original jurisdiction in this case. As I set forth in White v. Stitt, 2025 OK 68579 P.3d 636

¶2 This case is better suited for adjudication in district court. Additional facts are needed for Petitioner Tobacco Settlement Endowment Trust Fund (TSET) to establish standing in this case. "District courts are well-suited to take evidence and conduct hearings. We are not." Id. ¶ 13, 579 P.3d at 653. I would decline to assume original jurisdiction in this inter-governmental dispute.

I.

¶3 On May 22, 2025, the Legislature enacted House Bill 2783 (HB 2783), which amended 62 O.S. § 2308

¶4 On July 1, 2025, TSET petitioned this Court to assume original jurisdiction and declare HB 2783 unconstitutional. TSET also requested that the Supreme Court stay the effectiveness of the legislative enactment until the Court ruled on its application.

¶5 This Court stayed HB 2783 from going into effect on August 6, 2025.

II.

A.

¶6 The Supreme Court's original jurisdiction, when concurrent with the district court's jurisdiction, has long been recognized as a "stand-by service." Jarman v. Mason, 1924 OK 722102 Okla. 278229 P. 459Kitchens v. McGowen, 1972 OK 140503 P.2d 218Keating v. Johnson, 1996 OK 61918 P.2d 51Keating, 1996 OK 61918 P.2d 51Kitchens, 1972 OK 140

¶7 When the Supreme Court's jurisdiction is concurrent with the district court, we purport to exercise original jurisdiction when (1) the case concerns the public interest and (2) there is some urgency or pressing need for an early decision. Edmondson v. Pearce, 2004 OK 2391 P.3d 605Keating test); Fent v. Contingency Review Bd., 2007 OK 27163 P.3d 512rare case that will be entertained on original jurisdiction that requests declaratory relief." Edmondson, 2004 OK 23Keating, 1996 OK 61Jarman, 1924 OK 722

B.

¶8 TSET cannot show a pressing need for an expedited, final decision from this Court. TSET claims it may be harmedi.e. enjoining Respondents from enforcing HB 2783). The Supreme Court does not have a monopoly on granting injunctions. When interim relief can preserve the status quo and prevent the harm alleged by a petitioner, there is no urgent need for this Court to assume original jurisdiction. We exercise concurrent original jurisdiction "only when ... great injury will be done by ... [the Court's] refusal so to do." Keating, 1996 OK 61

¶9 This is not a case where the alleged harm cannot be alleviated with interim relief. Contra. Ethics Comm'n v. Cullison, 1993 OK 37850 P.2d 1069Naifeh v. Okla. Tax Comm'n, 2017 OK 63

C.

¶10 This case is also ill-suited for original jurisdiction because TSET has not established standing on the record before the Court. "The party invoking a court's jurisdiction has the burden of establishing his standing," and we may proceed to the merits only if standing exists. State ex rel. Fugate v. Stitt, 2025 OK 54577 P.3d 265Hunsucker v. Fallin, 2017 OK 100408 P.3d 599

¶11 To establish standing, a litigant must have "a legally cognizable interest in the outcome of the litigation." Indep. Sch. Dist. # 52 of Oklahoma Cnty. v. Hofmeister, 2020 OK 56473 P.3d 475may change the composition of the TSET board of directors. The text of Okla. Const. art. X, § 40 does not provide TSET with a legally cognizable interest in any particular person sitting on its board of directors. Directors are appointed by various state officers without any input from TSET. Okla. Const. art. X, §40(D). Rather, TSET is charged with preserving trust funds and expending certain earnings as specified in Okla. Const. art. X, § 40(E). Id. § 40(E)--(F).

¶12 TSET asserts that its board members may be removed and replaced putting the finality of its decisions at risk. (Appl. to Assume Orig. Juris. at 3.) This bare assertion fails to demonstrate injury-in-fact. Presumably, any person appointed pursuant to HB 2783 would at least constitute a de facto officer, protecting TSET's actions from collateral attack. See State ex rel. Bd. of Regents for Oklahoma A&M Colleges v. McCloskey Bros., Inc., 2009 OK 90227 P.3d 133

¶13 Similarly, any contention that TSET directors serving at the pleasure of their appointing authority would affect TSET's duties to preserve trust funds and expend certain earnings is speculative and hypothetical on the current record. See Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 16976 P.2d 545Toxic Waste Impact Grp., Inc. v. Leavitt, 1994 OK 148890 P.2d 906

¶14 None of TSET's directors are petitioners in this action, and TSET fails to adequately establish that it will suffer injury to a legally cognizable interest if HB 2783 goes into effect. It is conceivable that TSET could proffer some additional facts to demonstrate standing at a district court hearing. This is precisely the reason we should allow this matter to proceed in the district court rather than assume original jurisdiction.

¶15 I respectfully dissent.

FOOTNOTES

Edmondson v. Pearce test, I consider TSET's argument that it will be harmed by the replacement of directors. This does not, however, mean that TSET's alleged harm is an injury to a legally cognizable interest.

i.e. legally cognizable interest)] which must have been injured in fact i.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision." State ex rel. Fugate, 2025 OK 54